**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**LOUISVILLE DIVISION**
**CIVIL ACTION NO. 3:18-CV-845-CHL**

CINDY PEACOCK,                                                                          **Plaintiff,**

**v.**

**COMMISSIONER OF SOCIAL SECURITY,**                              **Defendant.**

## MEMORANDUM OPINION AND ORDER

Before the Court is the Complaint (DN 1) filed by Plaintiff, Cindy Peacock ("Peacock").

In her Complaint, Peacock seeks judicial review of the final decision of the Commissioner of

Social Security ("the Commissioner"). *See* 42 U.S.C. § 405(g) (2018). Peacock filed a Fact and

Law Summary on July 17, 2019. (DN 15-1.) The Commissioner filed a Fact and Law Summary

in response on September 16, 2019. (DN 19.)

The Parties have consented to the jurisdiction of a Magistrate Judge to enter judgement in

this case with direct review by the Sixth Circuit Court of Appeals in the event an appeal is filed.

(DN 12.) Therefore, this matter is ripe for review. For the reasons set forth below, the final

decision of the Commissioner is **AFFIRMED**.

## I.      BACKGROUND

On July 2, 2015, and August 20, 2015, respectively, Peacock protectively filed an

application for disability insurance benefits ("DIB") and supplemental security income ("SSI")

alleging disability beginning on February 1, 2014 (later amended to April 28, 2015). (DN 9-5. at

PageID # 356-64.) On April 17, 2018, Administrative Law Judge Roosevelt Currie (the "ALJ")

conducted a hearing on Peacock's application. (DN 9-2, at PageID # 99-126.) In a decision dated

June 19, 2018, the ALJ proceeded through the five-step evaluation process promulgated by the

Commissioner to determine whether an individual claimant is disabled. (*Id.* at 51-61.) Through that five-step analysis, the ALJ made the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2016. (*Id.* at 53.)

2. The claimant has not engaged in substantial gainful activity since February 1, 2014, the alleged onset date. (*Id.*)

3. The claimant has the following severe impairments: degenerative disc disease, fibromyalgia, and plantar fasciitis. (*Id.*)

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. (*Id.* at 55.)

5. [T]he claimant has the residual function capacity to perform a range of light work as defined in 20 CFR 404.1567(b) and 416.967(b). The individual remains able to lift, carry, push, and pull up to 10 pounds frequently and 20 pounds occasionally. The individual can stand walk for about four hours and sit for up to six hours in an eight-hour workday with normal breaks. Occasional [*sic*] balance, stoop, crouch, kneel, crawl and climb ramps and stairs. Never climb ladders, ropes or scaffolds. Avoid moderate exposure to vibrations, unprotected heights, moving machinery, and similar hazards. (*Id.*)

6. The claimant is unable to perform any past relevant work. (*Id.* at 59.)

7. The claimant was born on March 13, 1978 and was 35 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date. (*Id.*)

8. The claimant has a limited education and is able to communicate in English. (*Id.*)

9. Transferability of job skills is not an issue in this case because the claimant's past relevant work is unskilled. (*Id.*)

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform. (*Id.*)

11. The claimant has not been under a disability, as defined in the Social Security Act, from February 1, 2014 through the date of this decision. (*Id.* at 60.)

Peacock subsequently requested an appeal to the Appeals Council (DN 9-4, at PageID # 351-54), which denied her request for review on October 22, 2018 (DN 9-2, at PageID # 36-38). At that point, the ALJ's decision became the final decision of the Commissioner. *See* 20 C.F.R. §§ 404.981, 416.1481, 422.210(a) (2019); *see also* 42 U.S.C. § 405(h) (discussing finality of the Commissioner's decision). Pursuant to 20 C.F.R. § 422.210(c), Peacock is presumed to have received that decision five days later, on October 27, 2018. 20 C.F.R. § 422.210(c). Accordingly, Peacock timely filed this action on December 21, 2018. *See* 42 U.S.C. § 405(g).

## II.      DISCUSSION

The Social Security Act authorizes payments of DIB and SSI to persons with disabilities. *See* 42 U.S.C. §§ 401-434, 1381-1383(f) (2018). An individual shall be considered "disabled" if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A); *see also* 20 C.F.R. §§ 404.1505(a), 416.905(a) (2019).

### A.      Standard of Review

The Court is permitted to review final decisions rendered by the Commissioner but that review is limited to whether the Commissioner's findings are supported by "substantial evidence" and whether the Commissioner applied the correct legal standards. 42 U.S.C. § 405(g); *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997). "Substantial evidence" means "more than a mere scintilla"; it means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971). The Court must "affirm the Commissioner's decision if it is based on substantial evidence, even if substantial evidence would have supported the opposite conclusion." *Gayheart v. Comm'r of Soc. Sec.,* 710 F.3d 365,

374 (6th Cir. 2013); *see Smith v. Sec'y of Health and Human Servs.*, 893 F.2d 106, 108 (6th Cir. 1989) (holding that if the Court determines the ALJ's decision was supported by substantial evidence, the Court "may not even inquire whether the record could support a decision the other way"). However, "failure to follow agency rules and regulations" constitutes a lack of substantial evidence, even where the Commissioner's findings can otherwise be justified by evidence contained within the record. *Cole v. Astrue,* 661 F.3d 931, 937 (6th Cir. 2011).

## B. Five-Step Sequential Evaluation Process

The Commissioner has promulgated regulations that set forth a five-step sequential evaluation process that an ALJ must follow in evaluating a disability claim. 20 C.F.R. §§ 404.1520, 416.920 (2019). In summary, the evaluation process as follows:

1. Is the claimant involved in substantial gainful activity? If the answer is "yes," the claimant is not disabled. If the answer is "no," proceed to the next step.

2. Does the claimant have a medically determinable impairment or combination of impairments that satisfies the duration requirement and significantly limits his or her physical or mental ability to do basic work activities? If the answer is "no," the claimant is not disabled. If the answer is "yes," proceed to the next step.

3. Does the claimant have an impairment that meets or medically equals the criteria of a listed impairment within 20 C.F.R. Part 404, Subpart P, Appendix 1? If the answer is "yes," the claimant is disabled. If the answer is "no," proceed to the next step.

4. Does the claimant have the residual function capacity ("RFC") to return to his or her past relevant work? If the answer is "yes," then the claimant is not disabled. If the answer is "no," proceed to the next step.

5. Does the claimant's RFC, age, education and work experience allow him or her to make an adjustment to other work? If the answer is "yes," the claimant is not disabled. If the answer is "no," the claimant is disabled.

The claimant bears the burden of proof with respect to steps one through four. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). However, the burden shifts to the

Commissioner at Step Five to prove that other work is available that the claimant is capable of performing. *Jordan v. Comm'r of Soc. Sec.,* 548 F.3d 417, 423 (6th Cir. 2008). The claimant always retains the burden of proving lack of RFC. *Id.*; *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391-92 (6th Cir. 1999).

### C.  Peacock's Contentions

Peacock alleged the ALJ erred in three ways. (DN 15-1, at PageID # 1214-18.) Peacock argued that the ALJ erred in (1) determining she did not meet or equal any Listing, (2) not affording controlling weight to the opinions of her treating physicians, and (3) in determining her RFC. (*Id.*) Specifically, as to her RFC, Peacock argued that the ALJ overvalued the opinions of the state agency physicians and misconstrued and misused her hearing testimony. (*Id.*) The Court will assess each of these arguments below.

### 1.  Listings 1.00, 1.02, 1.04, 14.09(D)

Peacock argued that the ALJ erred in his Step Three analysis in concluding her impairments failed to meet a Listing. (DN 15-1, at PageID # 1214.) At Step Three of the five-step evaluation process, the ALJ considers whether the claimant has an impairment that satisfies the criteria set forth in the Listings. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). "[A] claimant who meets the requirements of a listed impairment will be deemed conclusively disabled." *Rabbers v. Comm'r of Soc. Sec.,* 582 F.3d 647, 653 (6th Cir. 2009). A claimant's impairment satisfies a Listing only when the claimant manifests the specific findings described in the Listing's medical criteria. 20 C.F.R. §§ 404.1525(d), 416.925(d) (2019). To meet the requirements of a listed impairment or its equivalent, a claimant must demonstrate specific findings that duplicate the enumerated criteria of the listed impairment. *Lawson v. Comm'r of Soc. Sec.*, 192 F. App'x. 521,

529 (6th Cir. 2006). The claimant bears the burden of proving her impairment satisfies all the specified criteria in a given Listing. *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990).

The ALJ addressed in his opinion whether Peacock's impairments met Listings 1.02 and 1.04 but found that the claimant failed to establish the necessary prerequisites for those Listings. (DN 9-2, at PageID # 55.) While fibromyalgia is not a listed impairment, the ALJ compared its medical equivalency to Musculoskeletal System Listings in section 1.00 and inflammatory arthritis under section 14.09(D), concluding that Peacock's fibromyalgia did not meet or medically equal a Listing. (*Id.*) In her brief, Peacock proffered no evidence to suggest that she met the necessary Listing criteria, nor did she specify what Listing she claimed to satisfy. (DN 15-1, at PageID # 1214.) Because Peacock has failed to do more than conclusively assert an error, the Court finds that she has waived her argument with respect to the ALJ"s Listing analysis. *See United States v. Layne*, 192 F.3d 556, 566-67 (6th Cir. 1999) (finding that issues adverted to in a "perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived) (quoting *McPherson v. Kelsey*, 125 F.3d 989, 995 (6th Cir. 1997); *Rice v. Comm'r of Soc. Sec.*, 169 F. App'x 453, 454 (6th Cir. 2006). Even absent waiver, as Peacock has failed to point to evidence in the record satisfying the Listing's requirement, she has not demonstrated that she meets Listing 1.02, 1.04, 14.09(D) or any other Listing. *See, e.g.*, *Thacker v. Soc. Sec. Admin.*, 93 F. App'x 725, 728 (6th Cir. 2004) ("When a claimant alleges that [s]he meets or equals a listed impairment, [s]he must present specific medical findings that satisfy the various tests listed in the description of the applicable impairment or present medical findings that satisfy the various tests listed in the description of the applicable impairment or present medical evidence which describes who the impairment has such equivalency."). Without a citation to any such evidence, the Court finds no error in the ALJ's Step Three analysis.

## 2.      Treating Physician Rule

Peacock contended that the ALJ failed to properly apply the treating physician rule.  (DN 15-1, at PageID # 1215-16.)  Specifically, Peacock argued that the ALJ failed to reach a conclusion regarding the treating physician status of the multitude of physicians treating her at the time of the hearing.  (*Id.* at 1217.)

Generally, an ALJ must give greater weight to the medical opinions of treating sources than to non-treating sources.  20 C.F.R. § 404.1527(c)(2), 416.927(c)(2) (2019).  Treating physician's opinions carry more weight because the opinions likely provide "a detailed, longitudinal picture" of the claimant's medical impairments that cannot be obtained solely from objective medical findings or from reports of consultants' examinations.  *Wilson v. Comm'r of Soc. Sec,* 378 F.3d 541, 544 (6th Cir. 2004).  An ALJ must give a treating source opinion concerning the nature and severity of the claimant's impairment controlling weight if the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with substantial evidence in the record.  20 C.F.R. § 404.1527(c)(2), 416.927(c)(2).

While Peacock provided a list of medical professionals who under 20 C.F.R. §§ 404.1527 and 416.927 could be considered treating physicians (DN 15-1, at PageID # 1216-17), she seems to have a misconception regarding to precisely what the ALJ must give controlling weight.  A necessary condition for the treating physician rule to be applicable is that a treating physician provide an *opinion*. 20 C.F.R. §§ 404.1527(a)(2) and 416.927(a)(2) define "medical opinions" as "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of a claimant's impairment(s), including symptoms, diagnosis, and prognosis, what a claimant can still do despite impairments, and a claimant's physical or mental restrictions."  20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2); *see also Dunlap v.*

*Comm'r of Soc. Sec.,* 509 F. App'x 472, 476 (6th Cir. 2012). Records containing notations, such as treatment notes only, are not medical opinions, and therefore, the treating physician rules does not apply to them. *Messina v. Comm'r of Soc. Sec.*, No. 1:12cv95, 2013 U.S. Dist. LEXIS 41362, at 2 (S.D. Ohio Mar. 25, 2013).

This Court's review of Peacock's proffered medical records reveals no such medical opinions of treating physicians within the administrative record. Furthermore, Peacock cited to no specific medical opinion in support of her argument, merely the four hundred plus pages of medical records contained within the administrative record. (DN 15-1, at PageID # 1217.) Accordingly, Peacock provided the Court with no medical opinion offered by a treating physician that qualifies for controlling weight under the Treating Physician Rule. Thus, the ALJ did not err in failing to apply the rule.

### 3.    Peacock's RFC

Peacock's final two arguments can be characterized as general attacks on the ALJ's utilization of certain evidence in making his ultimate finding on Peacock's RFC. Specifically, Peacock argued that the ALJ improperly gave greater weight to the medical opinions of the state agency physicians as compared to her alleged treating physicians and that the ALJ misstated and misused Peacock's hearing testimony. (DN 15-1, at PageID # 1214-15, 1217-18.)

A claimant's RFC is "the most [a claimant] can still do despite [the claimant's] limitations . . . based on all relevant evidence in [the claimant's] case record." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1) (2019). The RFC finding is based on a consideration of medical source statements and all other evidence, medical and non-medical, in the record. *Id.* Thus, in making the RFC finding, the ALJ must assign weight to the medical source statements in the record and consider

the descriptions and observations of the claimant's limitations as a result of any impairments from the claimant and the claimant's family and friends. 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3).

Here, the ALJ found that Peacock maintained the RFC to perform light work but was limited to a certain extent in her ability to lift, carry, push, and pull, as well as in her ability to stand, walk, and sit. (DN 9-2, at PageID # 55.) The ALJ also found that Peacock could only "occasionally balance stoop, crouch, kneel, crawl, and climb ramps and stairs" and "[n]ever climb ladders, ropes, or scaffolds." (*Id.*) The ALJ noted specifically that "in making this finding, [he] ha[d] considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with objective medical evidence and other evidence, including opinion evidence. (*Id.* at 56.) In support of his RFC finding, the ALJ highlighted that Peacock had a "reduced range of motion in her lumbar spine" and took medication for pain. (*Id.* at 59.) He emphasized that, despite her hearing testimony, Peacock had repeatedly reported continued pain relief and increased function with treatment including steroid injections, trigger point injections, and nerve blocks.[1] (*Id.* at 56.) The ALJ noted that Peacock underwent a right foot endoscopic plantar fasciotomy and, despite alleged pain, ambulated without difficulty. (*Id.* at 57.) He noted that an additional MRI of her right ankle resulted in an unremarkable finding. (*Id.* at 57.) An MRI of the claimant's left ankle showed no evidence of inflammation, thickening, or reactive marrow edema. (*Id.*) Regarding Peacock's gait and station, the ALJ cited more recent treatment notes revealing that the same were within normal limits apart from an observation of antalgic gait in early 2016. (*Id.* at 57.)

---

[1] Though Peacock argued that the ALJ misstated her testimony during the hearing regarding the efficacy of the injections, the Court finds that the ALJ did not. Instead, the ALJ correctly noted in his decision that during the hearing Peacock seemed to articulate greater pain and less pain relief than she reported to her treating physicians. (DN 9-2, at PageID # 111, 112; DN 9-7, at PageID # 724, 726.)

The ALJ gave great weight to the opinions of the state agency psychological consultants that Peacock's mental health conditions were non-severe. (*Id.* at 58.) The ALJ also gave great weight to the opinion of the state agency physicians upon reconsideration but imposed greater limitations than those opined by the state agency physicians "given evidence suggesting that the claimant ha[d] limited range of motion in her lumbar spine" and more standing and walking limitations. (*Id.*) Though Peacock argued that it was error for the ALJ to rely on the state agency physicians' opinions over her treating physicians, as the Court found above, there was no *opinion* from a treating physician in the record for the ALJ to consider. Instead, the ALJ's decision was based on a thorough review of the medical records from Peacock's physicians and contains citations to the same evidencing his review. Peacock provided no legal or factual basis for the ALJ to abstain from giving weight to the opinions of the state agency physicians or from relying on Peacock's treatment records to make his decision. (DN 15-1, at PageID # 1217-18.) Indeed, the ALJ explicitly did not adopt wholesale the state agency physician's conclusions given other evidence from Peacock's medical records that he deemed significant. (DN 9-2, at PageID # 58.) In sum, Peacock provided the Court no legal reasoning or evidence why the ALJ erred in considering or giving great weight to the medical opinion of the state agency physicians. (DN 15-1, at PageID # 1218.) Therefore, the Court finds no error in the ALJ's consideration of the state agency physicians' opinions, nor the weight the ALJ ascribed to the opinions.

The ALJ also relied upon Peacock's own testimony that she "can handle her personal care chores, light chores, drives, and takes care of her child" in making his RFC determination. (DN 9-2, at PageID # 59.) Peacock argued that her testimony was misconstrued and misused by the ALJ. (DN 15-1, at PageID # 1214-15.) However, based on the Court's review of the hearing transcript and the ALJ's decision, the Court finds that the ALJ did not misstate Peacock's

testimony. Peacock also argued that there is no correlation between her ability to care for her seventeen-year-old child and whether she can work at a sustained gainful employment level. (*Id.*) Peacock cited in support to *Singh v. Astrue*, No. C 12-04046 SI, 2013 WL 5340520, at *4 (N.D. Cal. Sept. 24, 2013), but that case is both non-binding authority and distinguishable from the instant case. In *Singh*, the United States District Court for the Northern District of California found that an ALJ's reliance on the plaintiff's parental duties and other household activities were "not specific and legitimate reasons for rejecting the medical opinion of plaintiff's treating physician." *Id.* Here, the ALJ did not rely on Peacock's daily activities to reject a treating physician's opinion, he merely considered them as part of his determination of her general RFC. The ALJ merely referred to Peacock's daily activities as part of his assessment of the extent of her pain, as he is permitted to do. *See* 20 C.F.R. §§ 404.1529(c)(3)(i), 416.929(c)(3)(i) (2016). While Peacock's level of activity was not extensive, she has not demonstrated it was indicative of disabling pain. Therefore, the Court finds that the ALJ did not err in his assessment of Peacock's testimony.

This Court in reviewing the ALJ's decision does not decide if there was evidence in favor of Peacock's version of her RFC. *Mokbel-Aljahmi v. Comm'r of Soc. Sec.*, 732 F. App'x 395, 401-02 (6th Cir. 2018). "The substantial-evidence standard . . . presupposes that there is a zone of choice within which decisionmakers can go either way, without interference by the courts." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (alteration in original) (quoting *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)). The Court may decide only whether there is substantial evidence to support the ALJ's decision. *Blakley,* 581 F.3d at 406. If substantial evidence is found to support the ALJ's decision, the Court will defer to that decision even if the record contains substantial evidence to support the opposite conclusion. *Id.* Based on the foregoing, the Court holds that the ALJ supported his RFC finding with substantial evidence.

Accordingly, the Court finds no reversible error regarding the ALJ's determination of Peacock's RFC.

## III.      CONCLUSION AND ORDER

For the reasons set forth above, and the Court being otherwise sufficiently advised, IT IS HEREBY ORDERED that the final decision of the Commissioner of Social Security is **AFFIRMED**.  A final judgement will be entered separately.

Colin H Lindsay, Magistrate Judge
United States District Court

cc:      Counsel of Record

March 20, 2020